## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRIVCAP FUNDING LLC,<br><br>     Plaintiff,<br><br>v.<br><br>SETH LEVINE, PASSAIC MAIN NORSE, LLC, ELIZABETH LOUISA VENTURES, LLC, NORTH BERGEN VENTURES, LLC, AMBOY LP VENTURES, LLC, PAVILION NORSE, LLC, 4318 KENNEDY PARTNERS, LLC, PERTH LP VENTURES, LLC, RIVERSIDE NORSE, LLC, RED CLAY NORSE, LLC, MADISON PARK INVESTORS, LLC, and DEPARTMENT OF COMMUNITY AFFAIRS,<br><br>     Defendants. | Civil Action No.<br><br>19-18122 (MCA) (LDW)<br><br><br>**REPORT AND RECOMMENDATION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

   Before the Court is the motion of Plaintiff PrivCap Funding LLC ("PrivCap") for an Order directing the disbursement to it of disputed funds in the sum of $45,000.00, which are on deposit in the Court's registry. (ECF No. 139). The Court construes the motion as one for summary judgment as to PrivCap's entitlement to the funds. The Department of Community Affairs, Division of Codes and Standards, Bureau of Housing Inspection (hereinafter "the State") opposes the motion. (ECF No. 143). The Honorable Madeline Cox Arleo, U.S.D.J., referred this motion to the undersigned for a Report and Recommendation, which is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. Having considered the parties' submissions (ECF Nos. 139, 143-46, 148-49) and for good cause shown, it is respectfully recommended that

Plaintiff's Motion for Summary Judgment (ECF No. 139) be **GRANTED** for the reasons set forth below.

## I.      BACKGROUND

### A.  Procedural Background

Plaintiff PrivCap commenced this action by Verified Complaint in September 2019, seeking to recover amounts due to it under allegedly defaulted loans to defendant Seth Levine and various entities in which Levine held an ownership interest, as well as to have the Court appoint a rent receiver for several properties that secured the defaulted loans.  (*See* Complaint, ECF No. 1).[1] Judge Arleo granted Plaintiff's Motion to Appoint a Receiver on September 27, 2019.  (ECF No. 4).  The instant motion relates to the sale of one such property in receivership, located at 112 North Pavilion Avenue, Riverside, New Jersey 08075 ("the Property").  (*See* ECF Nos. 4, 124).

The Property, owned by defendant Pavilion Norse LLC ("Pavilion Norse"), secured a $1.2 million loan PrivCap had made to Pavilion Norse.  PrivCap held a first-priority mortgage on the Property.  (ECF Nos. 1 ¶¶ 28-29; 123-1 at p. 3).  In January 2022, the Receiver sold the Property for $725,000, in accordance with an Order of this Court.  (ECF Nos. 128; 133-1 at p. 2).[2]  The Receiver, aware that the State was asserting its entitlement to $45,000 of the sale proceeds to satisfy a judgment the State claimed was enforceable against Pavilion Norse, sought and received the Court's permission to deposit the $45,000 in disputed proceeds with the Court.   (ECF No. 136).  It is now the Court's task, pursuant to that deposit Order, to distribute the disputed funds "in

---

[1]      The Court has subject matter jurisdiction of the action under 28 U.S.C. § 1332. (Complaint ¶¶ 3-14, ECF No. 1).

[2]      The sales proceeds were not sufficient to fully satisfy PrivCap's first priority mortgage on the Property.  (*See* Sussner Decl. ¶ 48, ECF No. 123-2).

accordance with the amount and priority of those parties' liens and encumbrances upon the Pavilion Norse Property." (*Id.* ¶ 1).

### B.  Facts Pertinent To The Instant Motion

The facts relevant to the determination of priority to the disputed funds concern the history of encumbrances on the Property.   On May 7, 2008, the Property was conveyed by deed to Pavilion Norse.  (Mezzacca Cert. ¶ 2, ECF No. 139-1; State Opp. Brief at 1-2, ECF No. 143).   On the same date, Pavilion Norse gave a mortgage to New York Community Bank, which was recorded on May 14, 2008.   That mortgage was refinanced on July 2, 2013 through the giving of a second mortgage to Customers Bank, recorded on July 17, 2013.   (*Id.*).   On July 7, 2015, the State docketed a $45,465.00 judgment against "Pavillion Norse LLC" located at "112 N Pavilion Av, Riverside, NJ 08075" – misspelling the name of the judgment debtor by adding a second "L" to the name Pavilion.  (Pl. Exh. D., ECF No. 139-1).   The mortgage on the Property was again refinanced on September 24, 2015, through Pavilion Norse's giving a third mortgage to Peapack-Gladstone Bank, recorded on October 19, 2015.  (Pl. Exh. E., ECF No. 139-1).   Pavilion Norse used the loan proceeds received in exchange for the Peapack mortgage to pay off the Customers Bank mortgage. (Pl. Exh. F., ECF No. 139-1).   On December 31, 2018, a fourth mortgage (the "PrivCap mortgage") was given by Pavilion Norse to PrivCap to secure the above-referenced $1.2 million loan from PrivCap.   The PrivCap loan proceeds were used to pay off and discharge the preexisting Peapack mortgage, which had previously paid off the Customers Bank mortgage.  (Pl. Exhs. H, J, K., ECF No. 139-1).

PrivCap has proffered sworn evidence on this motion that it had no knowledge of the State's 2015 Judgment when it acquired its 2018 mortgage to the Property.  (*See* Cohen Cert. ¶¶ 3-6, ECF No. 139-2).   It submits to the Court the result of its title agent's judgment search before

making the secured loan, which does not disclose the State's 2015 Judgment (presumably due to the State's misspelling of "Pavilion" in its docketed Judgment).  (*See* Mezzacca Cert., Exh. G, ECF No. 139-1 at p. 59).  As part of the secured loan transaction, PrivCap further obtained a Borrower's Affidavit from Pavilion Norse, representing that there were no pending judgments that would in any way affect title to the Property.  (*See id.*, Exh. I, ECF No. 139-1).  The State's 2015 Judgment therefore seems only have to come to light during the Receiver's sale of the Property.  (*See* Exh. A, ECF No. 123-3 at p. 16, n.9).

## II.   DISCUSSION

PrivCap's motion seeks an award of the disputed $45,000 sales proceeds from the Property pursuant to the doctrine of equitable subrogation.  (ECF No. 139).  That doctrine, if applicable, would confer priority of PrivCap's mortgage over the State's 2015 Judgment, thereby entitling PrivCap to the entirety of the disputed funds.  The State opposes the motion, arguing that PrivCap is not entitled to equitable subrogation because PrivCap failed to discover the State's 2015 Judgment due to its not conducting a reasonable title search.  (ECF No. 143).

### A.  Legal Standards

As an initial matter, the Court finds that the instant priority dispute turns purely on a question of law and that the record before the Court is sufficient to allow disposition on summary judgment.[3]  *See United Sav. Bank v. State*, 360 N.J. Super. 520, 525 (App. Div. 2003).  The parties

---

[3]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is material if it bears on an essential element of the [claimant's] claim, and is genuine if a reasonable jury could find in favor of the nonmoving party."  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003).  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  In considering a motion for summary judgment, the Court views all evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus.*

have submitted competent evidence of all recorded encumbrances on the Property and have raised

no disputed issues of material fact bearing on resolution of the priority dispute before the Court.

(*See supra* at 3-4; Pl. Exhs. A-K, ECF No. 139-1; State Exh. A, ECF No. 144).[4]

Absent the application of the doctrine of equitable subrogation, disputes concerning the

priority of recorded documents affecting the title to real property are generally governed by state

recording statutes. *See N.J.S.A.* 46:21-1 and *N.J.S.A.* 46:22-1. As New Jersey is a "race-notice"

jurisdiction, "where parties are competing for priority over the other's lien or mortgage, the party

that records its lien first will normally prevail as long as that party did not have actual knowledge

of a previously acquired interest." *Citizens Bank, N.A. v. Davis*, 2018 N.J. Super. Unpub. LEXIS

1471, *7-8 (Ch. Div. June 21, 2018); *see Cox v. RKA Corp.,* 164 N.J. 487 (2000) (citing *Palamarg*

*Realty Co. v. Rehac*, 80 N.J. 446, 454 (1979)). Here, it is undisputed that the State recorded its

2015 Judgment, albeit with a spelling error in the judgment debtor's name, before PrivCap

recorded its 2018 mortgage on the Property.

Notwithstanding the general proposition that first-recorded interests take priority over

later-recorded ones, in certain circumstances an exception is available under the doctrine of

equitable subrogation, which may be applied in the Court's equitable discretion. *See Sovereign*

*Bank v. Gillis*, 432 N.J. Super. 36, 44 (App. Div. 2013). The doctrine of equitable subrogation

---

*Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

[4]     The Court notes that because Plaintiff did not submit the instant motion as a formal Motion for Summary Judgment, the parties did not submit statements of undisputed material facts pursuant to Local Civil Rule 56.1(a). However, the Court finds it appropriate to waive the requirements of Local Civil Rule 56.1 for the purpose of the instant motion and consider the undisputed facts as set forth in the parties' statements of fact included in the existing briefing and the exhibits thereto "in the interest of judicial economy and upon no finding of bad faith." *Fox v. Bayside State Prison*, Civ. A. No. 14-5344, 2016 WL 589673, at *3 (D.N.J. Feb. 11, 2016).

provides that "if a third-party loans or advances funds to pay off an existing mortgage or other encumbrance in the belief that no junior liens encumber the subject premises, and it later appears that intervening liens existed, the new lender will be deemed to be substituted into the position of the prior mortgage holder by equitable assignment of the prior mortgage to give effect to the new lender's expectation and to prevent unjust enrichment of the junior encumbrances." *UPS Capital Business Credit v. Abbey*, 408 N.J. Super. 524, 529 (Ch. Div. 2009). "'To do otherwise would allow [defendant] to reap an undeserved windfall' by 'allowing the junior lienor to vault over the priority of the refinancing mortgage lender.'" *New York Mortg. Tr. 2005-3 Mortg.-Backed Notes v. Deely*, 466 N.J. Super. 387, 401 (App. Div. 2021) (quoting *Gillis*, 432 N.J. Super at 39, 51)). The doctrine is "highly favored in the law" and is appropriate "so long as the junior lienor … is not materially prejudiced." *Montefusco Excavating & Contracting Co. v. Middlesex County*, 82 N.J. 519, 523 (1980); *New York Mortg. Tr. 2005-3*, 466 N.J. Super. at 401. Equitable subrogation may be applied derivatively, such that a refinancing mortgagee may subrogate not only to the priority position of the mortgage immediately preceding it whose loan it satisfied, but to that of the mortgage refinanced and satisfied before that. *See United States v. Avila*, 88 F.3d 229, 239 (3d Cir. 1996) (holding that a property seller's right to equitably subrogate may be exercised by purchaser and subsequent purchaser, notwithstanding that the purchasers' money was not used to satisfy the prior liens).

It has long been held that lack of knowledge of junior encumbrances due to the negligence of the refinancing mortgagee will not preclude application of the doctrine of equitable subrogation. *See, e.g., New York Mortg. Tr. 2005-3*, 466 N.J. Super. at 396; *First Union Nat. Bank v. Nelkin*, 354 N.J. Super. 557, 565 (App. Div. 2002); *Kaplan v. Walker*, 164 N.J. Super. 130, 138 (App. Div. 1978). Similarly, failure to take constructive notice, which "is only a form of negligence," does

not bear upon the application of the doctrine. *In re Ricchi*, 470 B.R. 715, 721 (Bankr. D.N.J. 2012) (citing *First Fidelity Bank, Nat'l Ass'n, South v. Travelers Mortg. Servs., Inc.*, 300 N.J. Super. 559, 565 (App. Div. 1997)). Indeed, in recent years, New Jersey courts have held that even actual knowledge of an intervening lien may not automatically bar equitable subrogation. *See New York Mortg. Trust 2005-3*, 466 N.J. Super. at 399; *Gillis*, 432 N.J. Super. at 49-50.

### B.  Analysis

Here, the State does not dispute that the proceeds of PrivCap's mortgage loan were used to pay off the Peapack mortgage, which, in turn, had paid off the Customers Bank mortgage, which predated the State's Judgment.  Nor does the State come forward with any evidence to put into dispute PrivCap's evidence supporting that its judgment search revealed no existing liens on the Property.  (*See* Pl. Exh. G, ECF No. 139-1).  Instead, the State opposes application of the doctrine of equitable subrogation by alleging that PrivCap has a title insurance policy and that its title agent was negligent in conducting the judgment search at issue.  (State Opp. Br. at 10-15, ECF No 143).

First, that PrivCap allegedly has title insurance to cover any potential loss arising from the judgment search at issue plainly is not a proper basis on which to deny equitable subrogation. (State Opp. Br. at 11-14, ECF No. 143; State Sur-Reply at 3-4, ECF No. 148); *See U.S. Bank Nat'l Ass'n for GSR 2006-6F v. Wishnia*, No. A-1706-16T4, 2018 WL 4262061, at *6 (App. Div. Sept. 7, 2018) (giving priority to a title-insured defendant mortgagee "which acted in reliance on a title search that, due to plaintiff's acts and omissions, deemed the property free from any encumbrances"); *U.S. Bank Nat. Ass'n v. Hylton*, 403 N.J. Super. 630, 634 (Ch. Div. 2008) (equitably subrogating a plaintiff-mortgagee's lien position despite the alleged negligence of its title insurance agency in conducting in title search).

The Court likewise rejects the State's argument that application of equitable subrogation is barred by the alleged negligence of Plaintiff's title agency.  Although the State acknowledges in its brief that "[e]quitable subrogation is not prohibited due to negligence on the part of the subsequent encumbrancer," (*see* ECF No. 143 at 12), it contends that the judgment search conducted by PrivCap's title agency was "plainly unreasonable" and, therefore, that the doctrine of equitable subrogation is unavailable to PrivCap.  (State Opp. Brief at 5, 9-10).  The State argues that, despite the State's own spelling error in its docketed Judgment, Plaintiff's title agency should have used different search terms and varied spellings of the name "Pavilion" to reveal the encumbrance.  The State points to "several indices in the record demonstrating that such a search would have disclosed the Bureau's judgment" and notes that a judgment search conducted by a different agency nearly a year after the execution of Plaintiff's search identified the judgment at issue.  (*Id.* at 9).

As set forth above, neither failure to take constructive notice, nor any other form of negligence, precludes application of equitable subrogation.  *See Investors Savings Bank v. Keybank Nat'l Ass'n,* 424 N.J. Super. 439, 444 n. 3 (App. Div. 2012).  Although it is true that, where a mortgagee is "'faced with extraordinary, suspicious, and unusual facts which should prompt an inquiry, it is equivalent to notice of the fact in question,'" nothing so extraordinary is presented on these facts.  *U.S. Bank Nat'l Ass'n for GSR 2006-6F*, 2018 WL 4262061 at *6 (quoting *Howard v. Diolosa*, 241 N.J. Super 222, 232 (App. Div. 1990)).  The existence of certain tax records featuring the same discrepant spelling of "Pavilion" is not a sufficient basis on which to find notice or ascribe knowledge to PrivCap.  (*See* State Exh. A, ECF No. 144).  Moreover, even if the Court could find something akin to notice here, it would be of little consequence as even *actual* knowledge, which is not alleged, may not be a bar to a mortgagee's "'reliance upon equitable principles of priority'"

under New Jersey law.  *New York Mortg. Tr. 2005-3*, 466 N.J. Super. at 399 (quoting *Gillis*, 432 N.J. Super. at 49-50) (emphasis added)); *see also In re Ricchi*, 470 B.R. at 721.

Having found that the existence of title insurance and alleged negligence of the title agency will not bar invocation of the doctrine of equitable subrogation, the Court turns to the considerations of unjust enrichment and material prejudice to the State.  *See In re Ricchi*, 470 B.R. at 721 ("The doctrine [of equitable subrogation] is applied so that holders of intervening mortgages are not unjustly enriched at the expense of a new mortgagee."); *New York Mortg. Tr. 2005-3*, 466 N.J. Super. at 401 (application of the doctrine is appropriate "so long as the junior lienor, here defendant, is not materially prejudiced").  The pivotal inquiry turns on "'whether the payor reasonably expected to get security with a priority equal to the mortgage being paid.'"  *Gillis*, 433 N.J. Super at 46) (quoting Third Restatement § 7.6 cmt. e).  "Ordinarily, lenders who provide refinancing desire and expect precisely that, even if they are aware of an intervening lien."  *New York Mortg. Tr. 2005*-3, 466 N.J. Super. at 400 (quoting Third Restatement § 7.6 cmt. e); *see also* Third Restatement § 7.6 cmt. e, illus. 26.

Here, Plaintiff represents that it expected that "its mortgage would constitute a first lien" upon paying off the preceding mortgage.  (Pl. Br. at 2, ECF No. 139).  Indeed, PrivCap states that had it been aware of the State's Judgment, "it would either have been addressed by way of satisfaction or the loan would not have been made."  (Cert. of Daniel Cohen ¶ 7, ECF No. 139-2).  Plaintiff clearly anticipated that it would "acquire security with the same rank as the old mortgage" in extending its loan and discharging the superior encumbrance.  *U.S. Bank Nat. Ass'n v. Hylton*, 403 N.J. Super. at 640 (quoting *First Fidelity Bank, National Association South*, 300 N.J. Super. at 693 A.2d 525).  Furthermore, nothing in the record suggests that the State had any justifiable expectation that its lien would elevate to first priority, as the Judgment was always positioned

behind a superior mortgage interest. Granting Plaintiff a first-priority position through application of the doctrine would not be contrary to any reasoned expectation of either party. *See In re Ricchi*, 470 B.R. at 723; *New York Mortg. Tr. 2005-3*, 466 N.J. Super. at 401.

Further, there is no question that the State would be unjustly enriched if the Court declined to apply equitable subrogation. Absent application of the doctrine, the State's Judgment would advance to first lien priority, but only as a result of PrivCap having loaned the funds that discharged the preexisting Peapack mortgage, which itself discharged the Customers Bank mortgage that predated the Judgment. (*See supra* discussion at 2-3). It is precisely this result that the doctrine of equitable subrogation is designed to avoid.

The Court further finds that no material prejudice would result from application of the doctrine, as the State's Judgment would be situated in exactly the same priority as it would have been if PrivCap's refinancing had not occurred – that is, in the position behind the first priority mortgage. In its sur-reply, for which leave of Court was not granted but which has been considered by the undersigned in the interests of justice, the State speculates that it "likely was prejudiced." (State Sur-Reply at 2, ECF No. 148). Because, in order to defeat summary judgment, the State must show by "competent evidential material," beyond mere speculation, that a genuine issue of material fact exists as to any material prejudice that would arise from application of the doctrine, the Court is unpersuaded. *Merchs. Express Money Order Co. v. Sun Nat'l Bank*, 374 N.J. Super. 556, 563 (App. Div. 2005); *see also Bank of Am. N.A. v. R.H. Surgent, LLC*, 2018 N.J. Super. Unpub. LEXIS 1615, *10 (Ch. Div. 2018) ("Mere '[b]ald assertions are not capable of … defeating summary judgment.'") (quoting *Ridge at Back Brook, LLC v. Klenert*, 437 N.J. Super. 90, 97-98, (App. Div. 2014)).

In sum, the Court finds that Plaintiff PrivCap is entitled to equitable subrogation and, therefore, its mortgage on the Pavilion Norse property takes priority over the State's Judgment. Accordingly, Plaintiff has a superior claim to the disputed proceeds arising from the sale of the Property.

### III.    CONCLUSION

For the reasons set forth above, the undersigned respectfully recommends that the District Court **GRANT** Plaintiff's Motion for Summary Judgment (ECF No. 139).  The Court further recommends that the District Court enter an Order directing the Clerk of Court to disburse the disputed funds to Plaintiff in the amount of $45,000.00.  The parties to this motion are hereby advised that they have 14 days after being served with a copy of this Report & Recommendation to file written objections to it, pursuant to Fed. R. Civ. P. 72(b)(2).

Dated:  November 21, 2022


                                                          _ */s/ Leda Dunn Wettre*_____
                                                          **Hon**. **Leda Dunn Wettre**
                                                          **United States Magistrate Judge**

Original:      Clerk of the Court
      cc:      Hon. Madeline Cox Arleo, U.S.D.J.
               All Parties

11